IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 09-161 |
| | ) |
| BRANDON CARTER, | ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM OPINION</u>

Pending before the court are four petitions to revoke the supervised release of Defendant Brandon Carter ("Carter") (ECF Nos. 226, 229, 251 and 275). Carter denied the allegations and the parties presented evidence on April 6, 2023, May 4, 2023, and June 28, 2023. (Transcripts, ECF Nos. 250, 257, 295). On June 28, 2023, the government represented that it did not withdraw any alleged violations, but was primarily continuing to pursue violations that did not require the testimony of Carter's former probation officer, specifically: (1) failure to report questioning by law enforcement; (2) contact with a minor; and (3) failure to register as a convicted sex offender in Massachusetts and Georgia. (ECF Nos. 282 at 3 and 295 at 7-9). The parties submitted post-hearing briefs on disputed evidentiary and legal issues (ECF Nos. 299, 307, 312, 313). In its post-hearing brief, the government also contends that Carter travelled without permission. (ECF No. 299 at 13). The petitions are ripe for disposition.

Also pending is the government's motion for discovery (ECF No. 293). Carter filed a response (ECF No. 296) and the government filed a reply (ECF No. 298). The motion is ripe for decision. Finally, there are two pending motions for house arrest windows (ECF Nos. 300, 302), which the court took under advisement (ECF No. 305, 306).

Factual and Procedural Background

The credibility of witnesses for both sides is open to question. Carter has a long history of supervised release violations. The probation officer who supervised Carter when the alleged violations occurred (the "removed probation officer"), was removed from duty during the pendency of the hearing, due to concerns about the probation officer's veracity (in other situations not involving Carter).

Carter was convicted on August 13, 2012, of possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(b) and sentenced to 36 months of imprisonment, followed by a term of supervised release of 10 years. On October 28, 2016, the court revoked defendant's term of supervised release and imposed a revocation sentence of 18 months of imprisonment, followed by 8 years of supervised release. On April 19, 2018, the court again revoked Carter's supervised release and imposed a sentence of 7 months of imprisonment, with 8 years of supervised release to follow. On July 5, 2018, the court found additional violations and imposed a sentence of 5 months and 1 day of imprisonment to be served consecutive to the sentence imposed on April 19, 2018, with 8 years of supervised release to follow to be served concurrently with the sentence imposed on April 19, 2018.

The probation office filed a petition alleging travel without permission by Carter in October 2022 (ECF No. 196). The court set a revocation hearing for February 15, 2023. On February 9, 2023, the court entered an agreed-upon order modifying Carter's conditions of supervision with his consent (ECF No. 224) and cancelled the revocation hearing. The order imposed new special conditions on Carter:

> Special Condition: A defendant's employer must be approved by the United States Probation Office. Therefore, all documentation of work travel submitted by Mr.

> Carter must clearly indicate that it is for an approved business entity. Since Film Shockers is currently the sole approved employer, all documentation must include this business entity. For example, a document listing employment with "Press Play Weddings" or "Press Play Cinema" is insufficient, while a document listing "Press Play Weddings, a Film Shockers, Inc. business entity" or "Press Play Cinema, a subsidiary of Film Shockers, Inc." would be sufficient. Similarly, the signatures on the employment documentation must be those of an actual, current, and verifiable employee of the approved employer (currently Film Shockers). Upon request, Mr. Carter must supply the identity of the employee and provide contact information for that person, so that, if need be, the accuracy of the documentation may be verified.
>
> Special Condition: Travel requests continue to require at least 30-days of advance notice, and continue to require approval by the United States Probation Office prior to the travel.

(ECF No. 224).  The petitions at issue followed shortly thereafter.

A hearing was held on April 26 and May 4, 2023 and involved the first two petitions (ECF Nos. 226 and 229), which were filed, respectively, on March 3 and 9, 2023.  The removed probation officer testified at that hearing on behalf of the government.

After the May 4, 2023 hearing, there were numerous developments: the probation office filed a second supplemental petition (ECF No. 251); the court held a telephone status conference with counsel on June 12, 2023; a supervisory probation officer entered his appearance; the probation officer who testified at the hearing held on April 4 and May 8, 2023 was removed from duty as a probation officer; and the probation office filed a third supplemental petition (ECF No. 275).  The supervisory probation officer (who did not directly supervise Carter) testified at the continued hearing on June 28, 2023.  Government exhibits 1-11 and defense exhibits A-P were admitted into evidence.

Discussion

The parties agree that the government has the burden to prove the alleged violations of supervised release by a preponderance of the evidence. As recently summarized:

> The Supreme Court defines a preponderance of the evidence as proof which leads the fact finder to conclude "that the existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring). When applying the preponderance of the evidence standard, a court may consider hearsay evidence without violating the [supervised releasee's] due process rights.

*Hartmann v. May,* No. CV 20-33, 2023 WL 2655188, at *14 (D. Del. Mar. 27, 2023); *see also United States v. Hicks,* 510 F. App'x 167, 177 (3d Cir. 2013). The court will address the alleged violations seriatim.

1. Failure to report contact with law enforcement

This violation is based on the following condition:

Standard Condition #11: The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

It is based on the following conduct:

On February 27, 2023, Mr. Carter was stopped by the Massachusetts State Police at the Logan Airport in Boston, Massachusetts. Mr. Carter failed to report this law enforcement contact to his assigned Probation Officer.

The evidence presented at the hearing reflected that the incident occurred on February 27, 2023. On March 1, 2023, Carter discussed the incident at Logan Airport with the removed probation officer. (ECF No. 257 at 14). Even assuming that the incident should have been reported (and given Carter's history, he should err on the side of promptly reporting all such incidents), he spoke with the probation officer about it within the 72-hour window. The government concedes it failed to prove this violation. (ECF No. 313). The court so finds.

2. Contact with a minor

This violation relates to the following condition:

<u>Supervised Release Term #17</u>: With the exception of brief, unanticipated, and incidental contacts, the defendant shall not associate with children under the age of 18 except for family members or children in the presence of an adult who has been approved by the probation office.

It is based on the following conduct:

On March 9, 2023, [the removed probation officer] spoke with [the groom] for a wedding that was held on May 21, 2022, which Mr. Carter was hired as a videographer for. [The groom] reported that there were children present at his home when they were preparing for his wedding and children were also present at the wedding. [The groom] reported that Mr. Carter recorded children at his home and during the wedding and that he still has not received the completed footage from Mr. Carter. [The groom] reported that he was never informed by Mr. Carter of his past conviction for Possession of Material Depicting the Sexual Exploitation of a Minor or Mr. Carter's obligation to register with the Pennsylvania Megan's Law Sex Offender Registry. Mr. Carter did not have permission to attend this wedding, be present around the children at the wedding, and was not in the presence of an adult who has been approved by the probation office, which would allow him to be in the presence of those children.

The evidence at the hearing showed that the wedding was overwhelmingly attended by adults. There was evidence in a short video of only one minor present, the groom's 14-year-old relative (referred to variously as a cousin, nephew or brother). (ECF No. 295 at 34). There is no evidence that Carter "associated" with this minor. There is no evidence that Carter was alone with the minor, took a specific video or photo of the minor, or spoke to the minor at all. Based on the record, the court must conclude the evidence does not tip the scale in favor of the government. Carter's contacts with the minor were brief, unanticipated and incidental in the sense that the minor was one of the many attendees filmed as part of the wedding. The government failed to prove this allegation.

3. Failure to register in Massachusetts and Georgia

These allegations involve the following conditions:

5

Mandatory Condition #1: The defendant shall not commit another federal, state or local crime.

Supervised Release Term #18: As required by 18 U.S.C. §§ 3563(a)(8) and 3583(d), and the Sex Offender Registration and Notification Act (SORNA , 42 U.S.C. § 16901 et seg.), the defendant shall report the address where he will reside and any subsequent change of residence to the probation officer responsible for defendant's supervision, and further shall register as a convicted sex offender in any state where he resides, is employed, carries on a vocation, or is a student.

The allegations are based on the following conduct:

1) The government previously provided the Court, the defense, and the United States Probation Office with flight records of Brandon Carter. Those records reveal Delta Airlines flights regarding the following states: Massachusetts; Georgia; Michigan; and Colorado.

2) Because each state has different laws regarding the registration of sex offenders, [the supervisory probation officer] reviewed the flight records and the laws of each of these states to determine if any violation of registration appeared to have occurred. Carter's flights do not appear to have violated the laws of Michigan or Colorado.

3) Pursuant to O.C.G.A section 42-1-12, federal offenses similar to Georgia's computer pornography and child exploitation crime at Section 16-12-100.1 are sexual offenses requiring registration. Specifically, subsection (e)(7) requires a non-resident sexual offender who enters the state for the purposes of employment to register. More specifically, subsection (e)(16) lists the information that must be supplied, including biographical information, fingerprints, photographs, "address, within this state or out of state", vehicle information, and information regarding the dates, places and address of employment. This information is required to be provided to the county sheriff within 72 hours of his entry into the state, per subsection (f)(2), (3). In accordance with subsection(n)(1), the failure to register is a felony, punishable by not less than 1 and not more than 30 years of incarceration.

4) Pursuant to Section 178C of the Commonwealth of Massachusetts, in accordance with the Massachusetts sex offender laws, an individual convicted of a qualifying sex offense must register if they live, work, or attend school in Massachusetts. Possession of child pornography is a qualifying offense in Massachusetts. If the offender stays in Massachusetts for 4 days or more in a row or for 14 days or more (consecutive or non) in a calendar year, [the offender] must register.

5) [The supervisory probation officer] personally contacted the agencies from Georgia and Massachusetts where registration records are stored and learned that Carter has not registered in those states as required.

On February 5, 2023, Mr. Carter flew from Pittsburgh to Boston via Delta Airlines and returned to Pittsburgh from Boston via Delta Airlines on February 27, 2023. During this period, Mr. Carter failed to report his residence to the Massachusetts Sex Offender Registry Board. Mr. Carter also failed to report his change of residence to [the removed probation officer].

As an initial matter, the fact that Massachusetts and Georgia did not file criminal charges against Carter is not dispositive.  The government's burden to prove a supervised release violation by a preponderance of the evidence is lower that the "beyond a reasonable doubt" standard applicable in a criminal case.

Carter emphasizes that he is "employed" only in Pennsylvania.[1]  The more applicable part of the condition, however, is that he must register in any state where he "carries on a vocation."  That term is not defined in the guidelines.  The ordinary usage means any place where someone performs his work. To "carry on" means "to continue doing, pursuing, or operating."  https://www.merriam-webster.com/dictionary/carry-on, last visited 8/16/2023. The word "vocation" means "the work in which a person is employed: **OCCUPATION**." https://www.merriam-webster.com/dictionary/vocation, last visited 8/16/2023.  In Carter's case, he carries on his vocation as a videographer in any state to which he travels to video a wedding or other ceremony.

A more difficult question is whether he must register pursuant to the SORNA condition every time he travels for work, or whether his duty to register is limited by state law – i.e., he only needs to register if required to do so under the law of that state.  The probation office and government appear to concede that the latter interpretation is correct because they withdrew charges based on Carter's travel to Colorado and Michigan after they determined that registration was not required under those state's laws.   This court agrees.  The SORNA condition and the condition that Carter not violate a federal, state or local law impose a consistent standard.  Carter must register if required to do so under state law.  The question, then, is whether Carter was required to register under Massachusetts or Georgia law.

    a.  Massachusetts

---

[1] The government does not contend that Carter resided outside Pennsylvania.

The duty to register in Massachusetts is triggered if a person lives, works or goes to school in Massachusetts for 4 days or more in a row or for 14 days or more in a calendar year. Mass. GL c.6 § 178C. The supervisory probation officer was unable to identify what 4 days in a row Carter stayed in Massachusetts. ECF No. 295 at 24. There was no evidence that he stayed for 14 days or more in a calendar year, i.e., either 2022 or 2023 (to date).[2] The evidence at the hearing demonstrated that Carter was not in Massachusetts continuously from February 5 to 27, 2023, because he flew back to Pittsburgh on February 5, 2023, to attend his grandmother's funeral. Defendant's Exh. P. The court finds that the government failed to prove this violation.

    b. Georgia

The duty to register in Georgia is triggered if a person: "Is a nonresident sexual offender who enters this state for the purpose of employment or any other reason for a period exceeding 14 consecutive days or for an aggregate period of time exceeding 30 days during any calendar year regardless of whether such sexual offender is required to register under federal law, military law, tribal law, or the laws of another state or territory." Ga. Code Ann. § 42-1-12(e)(7). The government argues that the 14-day time limit modifies only the phrase "any other reason," such that Carter must register if he enters Georgia for work, regardless of how short a time he stays. In other words, the government posits three independent registration clauses:

1. for the purpose of employment; or
2. any other reason for a period exceeding 14 consecutive days; or
3. for an aggregate period of time exceeding 30 days during any calendar year.

The government contends that if the 14-day time limit applies to every reason, including employment, the phrase "purpose of employment" would be mere surplusage.

---

[2] Neither party addressed the court's question about how to count days (ECF No. 295 at 38) in the post-hearing briefs.

The government represents that it has been unable to find any decisions addressing this issue. (ECF No. 307 at 2). Section (f)(2) provides that a person must register within 72 hours of entry into the state. It would be odd for the statute to apply to employment visits less than 72 hours because it would allow a person to register after he already completed his work and left the state. In dicta, the Georgia Supreme Court appeared to apply the 14-day limit to work, in noting: "Thus, for example, under OCGA § 42–1–12(e)(7), a sexual offender who enters this state on an employment assignment of 14 days is obligated to register." *Dunn v. State*, 286 Ga. 238, 243 (2009).

The court is not persuaded by the government's argument that travel for employment uniquely implicates the policy concerns underlying the registration requirement for sex offenders (ECF No. 307 at 2-3). While an individual travelling for employment may be more likely to encounter another person than someone on an outdoor adventure, an employment-based encounter is more likely to involve an adult and a business setting.

Given the facial ambiguity in the statute, and the factual ambiguity in the interactions between Carter and the removed probation officer about whether Carter was given approval for his travel to Georgia without registering[3], the court finds that the government failed to meet its burden to prove this violation.

4. Travel without permission – airline flights

This violation involves the following condition:

Standard Condition #3: You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer. (Grade C).

---

[3] The supervisory probation officer testified that the probation office contacts the state the defendant seeks to travel to, determines the applicable registration requirements, and notifies the defendant. ECF No. 295 at 20, 25.

It is based on the following alleged conduct:

On May 3, 2023, [the removed probation officer] received the flight records from Delta Airlines of Mr. Carter's recorded flights. The following flights and travel out of the Western District of Pennsylvania were not approved by the United States Probation Office.

1. Flight from Pittsburgh to Boston on May 15, 2022
2. Flight from Pittsburgh to Atlanta on October 6, 2022
3. Flight from Atlanta to Pittsburgh on October 9, 2022
4. Flight from Detroit to Pittsburgh on October 31, 2022
5. Flights from Denver to Detroit and Detroit to Pittsburgh on November 5, 2022
6. Flight from Pittsburgh to Atlanta on November 11, 2022
7. Flight from Atlanta to Pittsburgh on November 13, 2022
8. Flight from Boston to Pittsburgh on February 2, 2023
9. Flight from Pittsburgh to Boston on February 5, 2023
10. Flight from Boston to Pittsburgh on February 27, 2023 (Previously reported to the Court)
11. Flight from Pittsburgh to Boston on March 8, 2023

The supervisory probation officer testified that he had no knowledge whether Carter actually travelled or stayed in a state that required registration on the dates reflected in the flight records. (ECF No. 295 at 22). The supervisory probation officer did not know about any conversations between Carter and the removed probation officer with respect to this travel. *Id.* at 24. It is unclear whether Carter received verbal approval for this travel. Without the testimony of the removed probation officer, the government did not meet its burden to prove by a preponderance that Carter engaged in travel without permission based solely upon these flight records.

5. Travel without permission – Alyssa DiPacio

This violation is based on the following condition:

Special Condition: A defendant's employer must be approved by the United States Probation Office. Therefore, all documentation of work travel submitted by Mr. Carter must clearly indicate that it is for an approved business entity. Since Film Shockers is currently the sole approved employer, all documentation must include this business entity. For example, a

document listing employment with "Press Play Weddings" or "Press Play Cinema" is insufficient, while a document listing "Press Play Weddings, a Film Shockers, Inc. business entity" or "Press Play Cinema, a subsidiary of Film Shockers, Inc." would be sufficient. Similarly, the signatures on the employment documentation must be those of an actual, current, and verifiable employee of the approved employer (currently Film Shockers). Upon request, Mr. Carter must supply the identity of the employee and provide contact information for that person, so that, if need be, the accuracy of the documentation may be verified.

It is based on the following alleged conduct:

> On March 1, 2023, Mr. Carter reported to [the removed probation officer] that he traveled to Boston, Massachusetts to film a wedding. On March 2, 2023, Mr. Carter reported to [the removed probation officer] that he had traveled to State College, Pennsylvania, to film a commercial. Mr. Carter did not receive permission from the Court or his assigned Probation Officer to travel to either of these locations.

The allegation that Carter submitted contracts with a fictitious employee does not depend on the removed probation officer's testimony. Even assuming, arguendo, that the removed probation officer approved the travel, Carter obtained that permission under false pretenses. Carter testified that he regularly submitted contracts signed by Alyssa DiPacio, who was not a verifiable employee (ECF No. 257 at 25). Carter explained that he did not sign the contracts himself because he did not want prospective clients to research his background and refuse to hire him. *Id.* Carter also testified that Alyssa DiPacio was never an employee of Film Shockers; she does not exist under that name; and he was unable to contact her to obtain her attendance at the hearing. *Id.* at 48-52. This conduct is not a mere "lack of business savviness," as defense counsel asserts (ECF No. 312 at 13). Carter's conduct defeats a primary purpose of the special condition, which is to ensure that the probation office can verify that all travel requests are legitimate.

The special condition is asserted as a violation only in one pending petition (ECF No. 226). The relevant conduct relates only to travel to Boston, MA, and State College, PA, as reported by Carter to the removed probation officer in March, 2023. Even if Carter submitted

11

other travel requests based on a fictitious Alyssa DiPacio signature, they are not before the court because Carter was not charged with those violations.[4]

There is no evidence in the record that Carter submitted any violative travel requests after February 9, 2023, the date the special condition was imposed. Carter testified that after the special condition was imposed, his mother signed the contracts. (ECF No. 257 at 27). His testimony is supported by Defendant exhibit F, which is a contract in March 2023 signed by Rachael Carter. Government exhibit 5 (a contract dated February 17, 2022 related to the wedding in Massachusetts) is the only contract entered into evidence that was signed by Alyssa DiPacio. The travel dates related to that contract, however, were in May 2022. There is no evidence that Government exhibit 5 had any connection to Carter's travel in February or March, 2023 (almost one year later). None of the other exhibits disclose a connection between Alyssa DiPacio and the travel to State College and Boston, MA in 2023 that was charged as a violation of the special condition. The court finds that the government failed to prove this violation.

6. Violations dependent upon the testimony of the removed probation officer

The government presented testimony from the removed probation officer at the hearings on April 26 and May 4, 2023. In its response to Carter's motion to dismiss all charges, the government agreed that many of the violations were dependent upon the removed probation officer's testimony. (ECF No. 282 – identifying the charges that were not dependent on his testimony).

Prior to the hearing on June 28, 2023, the court notified the parties that it determined that it would not give any credit to the testimony of the removed probation officer. ECF No. 295 at

---

[4] Carter is also not charged with any violations with respect to the United Airlines flight records submitted by the government. (ECF No. 299-1).

6. Carter was not given an opportunity to recall and cross-examine the removed probation officer. The court adheres to its determination. Accordingly, the government failed to meet its burden with respect to all other charges.

Conclusion about alleged violations

In summary, the court finds that the government did not meet its burden to prove any of the alleged supervised release violations by a preponderance of the evidence. Carter should not interpret this opinion as condoning his conduct. He has a long history of violations and the court – again – reminds him that he is required to comply <u>fully</u> with all conditions of supervision. The court is not finding that Carter was blameless; it merely concludes that without the testimony of the removed probation officer, the record before the court is not sufficient to meet the government's burden with respect to the specific violations with which Carter was charged in the pending petitions.

Going forward, to prevent confusion and additional disputes, Carter should meet and confer with his probation officer in advance of any conduct that may implicate his conditions. For example, if children are expected to be present at an event, Carter should disclose and confirm – in writing – the nature of his interactions. In addition, Carter should arrange for a third-party adult to be present, who has been approved in writing by the probation office. Approval for future travel requests should be documented in writing and the 30-day notice condition must be followed. Carter should not rely on alleged oral approval from the probation officer. Carter and the probation officer should meet in advance to resolve any disagreements or ambiguities.

Government Motion for Discovery

The government seeks a copy of the video clips that Carter "referenced" during his testimony in the hearing. Carter provided a thumb drive to the government on June 30, 2023, with several clips from the wedding. On July 20, 2023, after the parties conferred, Carter provided a storage device to the government, but the format of the information contained on it ("BRAW format") was not accessible to the government.

The government notified the court that it need not immediately rule on the motion because it appeared that the parties would reach an amicable resolution. In its reply brief, the government informed the court that the parties did not reach a resolution. The government seeks: (1) full length, unmodified copies of all videos played or referenced during Carter's testimony; (2) in an accessible format, such as mp4; and (3) a notice on the docket correlating the video clips with the associated portions of Carter's testimony. Carter agrees that the government is entitled to a copy of the videos that were entered into evidence, but opposes any further efforts to search his computer or to produce other videos.

At the hearing on May 4, 2023, Carter testified about videos of the wedding he filmed in Massachusetts. The court instructed the defense to put the items on a separate disc and provide the disc to the government. (ECF No. 257 at 38). As the government correctly points out, it is important for the court to have a full record of the evidence presented at the hearing.

The government's motion for discovery will be granted. Carter's testimony placed the videos of that wedding at issue. The court does not regard Carter providing files in a proprietary, BRAW format (which would not be reasonably accessible by the government or the court) as a good faith effort to satisfy his obligations. Carter shall forthwith provide, in an accessible format such as mp4: (1) a copy of the information he provided in BRAW format on July 20, 2023; (2)

14

full length, unmodified copies of all videos played or referenced during Carter's testimony; and (3) a notice on the docket correlating the video clips with the associated portions of Carter's testimony.[5]

Motions for House Arrest Windows

There are two pending motions for house arrest windows (ECF Nos. 300, 302), which the court took under advisement (ECF No. 305, 306). They relate to travel on August 18-20, 2023, and August 24-26, 2023. Carter subsequently reported that Press Play Cinema is now approved by the probation office as Carter's employer. (ECF No. 308-1). The probation office's only remaining objection to the travel was that Carter was on home incarceration. *Id.* That condition will be removed, because it was imposed in light of the pending petitions. The probation office did not set forth any other basis to deny Carter's travel requests. Carter is reminded that he must continue to comply with all remaining conditions of supervision, including registering with any state where he is required to register.

Conclusion

For the reasons set forth above, the petitions to revoke Carter's supervised release (ECF Nos. 226, 229, 251 and 275) will be dismissed. The home incarceration condition imposed by the magistrate judge on March 28, 2023 (ECF No. 239) will be removed. All other conditions of supervision remain in full force and effect. Carter is admonished to fully comply with all conditions of supervision. The motions for house arrest windows (ECF Nos. 300, 302) will be granted. The government's motion for discovery (ECF No. 293) will be granted.

---

[5] The court viewed the videos during the hearing and need not review them again to resolve the pending petitions, as discussed above.

An appropriate order follows.

Dated:  August 17, 2023						By the court:

						 /s/ Joy Flowers Conti
						Joy Flowers Conti
						Senior United States District Judge